# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL WALLACE, et al., )<br>)<br>    Plaintiffs, )<br>)<br>    vs. )<br>)<br>COMMUNICATIONS UNLIMITED, INC., )<br>et al., )<br>)<br>    Defendants. )<br>) | Case No. 4:18-cv-00503-JAR |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the Motion to Compel Individual Arbitrations and Stay Litigation filed by Defendants Communications Unlimited, Inc.; C.U. Employment, Inc.; Communications Unlimited of the South, Inc.; Communications Unlimited Contracting Services, Inc.; Communications Unlimited Marketing Services, Inc.; Broadband Infrastructure & Connection, LLC; Communications Unlimited, LLC; and Does 1 through 50, inclusive. (Doc. 16.) Defendants argue that Plaintiffs' claims are subject to a binding arbitration agreement that delegates to the arbitrator even challenges to the agreement's validity. (Doc. 17.) Plaintiffs Michael Wallace, Christian Johnson, and Jefferey Super, on behalf of themselves and others similarly situated, respond that the Court should find that the arbitration agreement is unenforceable and allow the suit to proceed. (Doc. 26.) The motion is fully briefed and ripe for ruling. (*See* Doc. 28.)

**Background**

Plaintiffs are former "Wire Technicians" employed by Defendants to install and service "modems, routers and wireless networks in residential and commercial environments." (Doc. 1 at 2.) They advance claims under the Fair Labor Standards Act, Missouri Minimum Wage Law, and North Carolina Wage and Hour Act, alleging that "Defendants systemically and uniformly failed to pay [Wire Technicians] all wages owed including overtime wages" and that "Defendants had a policy, practice and procedure of breaking the compensation agreement with [Wire Technicians]" by failing to pay all monetary sums owed at the agreed rate, failing to follow the bonus program, and failing to properly calculate overtime wages. (*Id*. at 1-3.) Plaintiffs seek to represent "all current and/or former employees of Communications Unlimited who hold or have held non-exempt positions during the relevant time period." (*Id*. at 3.)

Defendants argue that Plaintiffs are bound by a Mutual Agreement to Arbitrate Claims (the "Agreement") that requires them to seek relief through individual arbitration. (Docs. 17, 17-1.) In relevant part, the Agreement states:

> **Claims Covered by the Agreement**
>
> [Communications Unlimited ("CU")] and I mutually agree to resolve by arbitration all claims or controversies ("claim" or "claims"), past, present or future[.]
>
> . . .
>
> This Agreement covers any and all disputes that arise between CU and me with the exception of claims that are expressly excluded from arbitration elsewhere in the Agreement. Examples of the kinds of claims that are covered by this Agreement include, but are not limited to:
>
> - claims for breach of any contract (express or implied);
>
>   . . .
>
> - claims for wages, salary, benefits, or other compensation due, claims for violation of the Fair Labor Standards Act . . . or any state law relating to the payment of wages and/or hours[.]

. . .

Additionally, the parties expressly agree and acknowledge that they are required by this Agreement to participate in bilateral arbitration that exclusively involves CU and I and that arbitration pursuant to the Agreement will not be conducted as a class action, collective action, or joint or consolidated action involving parties other than CU and I.

. . .

**Claims not Covered by the Agreement**

Claims excluded from the Agreement are the following:

Claims by me for workers' compensation benefits . . . or unemployment benefits;

Claims for benefits under a company benefit or pension plan[;]

Claims involving patents or inventions;

Claims for exclusively injunctive and/or equitable relief, which do not seek monetary damages of any kind[.]

. . .

**Arbitration Procedures**

. . .

[T]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable.

. . .

**Intention that Arbitrator Decide "Gateway" Questions of Arbitrability**

The parties expressly agree and acknowledge their "clear and unmistakable" intent, consistent with *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), for this Agreement to cover all "Gateway" questions of arbitrability . . . [and] that the Arbitrator, and not a court or agency, will decide all questions of arbitrability, specifically including but not limited to whether the parties entered into an agreement to arbitrate; whether the Agreement is unconscionable, otherwise voidable, or void; and whether the Agreement can be enforced even if unconscionable or otherwise voidable through modification or severance[.]

. . .

>The Arbitrator shall have the right and obligation to adjust the allocation of the parties' respective financial responsibility for the payment of fees and/or costs imposed . . . where allocation of [responsibility] is necessary to ensure that the Agreement is conscionable or otherwise enforceable.
>
>. . .
>
>**Acceptance/Voluntary Agreement**
>
>**The submission of an application, acceptance of employment or the continuation of employment by an individual shall be deemed to be, and shall constitute, acceptance of this Agreement. No signature shall be required for this Agreement to be applicable.**

(Doc. 17-1 at 12-20.) Relying on the language of the Agreement, Defendants argue that this Court must enforce its terms as written and compel Plaintiffs to pursue their claims through individual arbitration. (Doc. 17.)

Plaintiffs respond that the Agreement lacks the fundamental requirements for the formation of a contract—it was not executed and lacks adequate consideration—and that it is unconscionable because it lacks mutuality insofar as some claims are exempted from arbitration, allowing Defendants to unilaterally "opt-out," and because the requirement that they apply the arbitrator's "then-current" procedures makes it impossible to predict what rules will apply to future claims. (Doc. 26.) In addition, Plaintiffs argue that the Agreement's cost-splitting scheme imposes an unconscionable financial burden on them. (*Id*.) Therefore, they argue, the Court should invalidate the Agreement and allow the suit to proceed.

Defendants reply that the Agreement delegates all of Plaintiff's "gateway" challenges to validity and conscionability to the arbitrator and that therefore the Court lacks the authority to consider them. (Doc. 17.)

**Legal Standard**

"[A]rbitration is a matter of contract." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Accordingly, "courts must 'rigorously enforce' arbitration agreements according to their terms," *id* (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)), including requirements to pursue claims through individual arbitration, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). However, "courts [may] refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract,'" *id.* (quoting 9 U.S.C. § 2), "such as fraud, duress, or unconscionability," *id.* (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "A court determines the validity of an arbitration agreement by applying state contract law principles." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 807 (Mo. 2015).

## Discussion

The Agreement expressly requires Plaintiffs to bring their claims in the form of individual arbitrations. (Doc. 17-1 at 12-13.) Unless Plaintiffs can show that grounds exist for the revocation of the Agreement, the Court must stay the case and compel individual arbitration. *Italian Colors Rest.*, 570 U.S. at 233; *Epic Sys.*, 138 S. Ct. at 1621.

As noted, Plaintiffs challenge the Agreement on both formation and conscionability grounds. (Doc. 26.) Defendants argue that those are "gateway" issues reserved for the arbitrator pursuant to the so-called "delegation provision" in the Agreement, which states that "the Arbitrator, and not a court or agency" decides questions such as "whether the parties entered into an agreement to arbitrate; whether the Agreement is unconscionable, otherwise voidable, or void; and whether the Agreement can be enforced even if unconscionable or otherwise voidable through modification or severance." (Doc. 28 at 2-3; Doc. 17-1 at 16-17.) As such, Defendants contend, this Court lacks the authority to even consider Plaintiffs' arguments. (Doc. 17 at 4-5.)

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). "When considering whether parties have intended to delegate threshold questions of arbitrability to an arbitrator, '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so.'" *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 43 (Mo. 2017) (quoting *Rent-A-Ctr.*, 561 U.S. at 69 n.1). "If the delegation provision is valid as a matter of law, all other issues raised in the case should not be addressed, and the Court's only role will be to enter an order compelling arbitration." *Jones v. Titlemax of Missouri, Inc.*, No. 4:15-CV-01361-JAR, 2016 WL 4158886, at *4 (E.D. Mo. Aug. 5, 2016).

### 1. *Failure to Contract for Want of Consideration (All Plaintiffs)*

Plaintiffs begin by arguing that no valid contract was ever formed because the Agreement lacks adequate consideration. "The essential elements of any contract, including one for arbitration, are 'offer, acceptance, and bargained for consideration.'" *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (quoting *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988). Specifically, Plaintiffs argue that continued at-will employment is not valid consideration to support a binding contract under Missouri law. (Doc. 26 at 7-9.)

The Court agrees with Plaintiffs' assertion, as far as it goes. Consideration requires "either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 25 (Mo. Ct. App. 2008). Because the "[t]erms and conditions of at-will employment are not enforceable at law as *contractual duties*," a continued at-will employment relationship does not constitute legal consideration. *Id*. at 18.

That said, the Court does not agree that the Agreement fails for want of adequate consideration. In *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 809 (Mo. 2015), the Supreme Court of Missouri held that a mutual agreement to be bound by an arbitration agreement is adequate consideration. *See also Green v. Broker Sols., Inc.*, No. 4:17CV844 RLW, 2017 WL 2633506, at *2 (E.D. Mo. June 16, 2017) ("A mutual promise between an employee and an employer to arbitrate employment disputes is valid consideration to create an enforceable bilateral contract."). The Agreement expressly states that "CU and I mutually agree to resolve by arbitration all claims or controversies . . . past, present or future[.]" (Doc. 17-1 at 12.) Accordingly, the Court concludes that there was adequate consideration to form a valid contract.

Plaintiffs' assertion that the Agreement excludes some claims does not change the Court's conclusion that the parties' mutual agreement to arbitrate disputes is sufficient consideration to form a contract. As an initial matter, the exclusions apply equally to both Defendants and its employees. (Doc. 17-1 at 13-14.). Secondly, many of the exclusions cover claims that only an employee can bring, such as workers compensation or unemployment claims. (*Id.*) In any event, exact, mirror-image mutuality is not required. *Jones*, 2016 WL 415886, at *6. In short, the parties' mutual agreement to arbitrate the majority of their past, current, and future disputes is adequate consideration to support a valid contract. *Green*, 2017 WL 2633506, at *2.

## 2. *Failure to Contract for Want of Acceptance – Plaintiff Wallace[1]*

Plaintiffs also argue that Wallace's failure to sign the 2015 Agreement robs it of the essential requirement of acceptance, meaning he never had a valid contract with Defendants and

---

[1] The Court notes Plaintiffs' passing assertion that "Wallace was told by other employees that [Defendants' office manager] also forged their signatures," but, because Wallace is the only plaintiff to affirmatively assert that he did not sign the Agreement, the Court construes this argument as applying only to his claims.

7

he is not subject to the delegation provision. (Doc. 26 at 6-9.) Defendants argue that the delegation provision means that an arbitrator must determine what effect, if any, Wallace's alleged lack of acceptance had on the validity of the Agreement. (Doc. 28 at 1-4.) In addition, they assert that Wallace accepted the terms of the Agreement by continuing to work for Defendants. (*Id*.)

The Supreme Court's holding in *Rent-A-Center* appears to support Defendants' position. In that case, Rent-A-Center sought to enforce an arbitration agreement with a delegation provision very similar to the one in Defendants' Agreement:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

*Rent-A-Center*, 561 U.S. at 66. Rent-A-Center's employee opposed arbitration "on the ground that the arbitration agreement in question is clearly unenforceable in that it is unconscionable." *Id*. The Court noted that 9 U.S.C. § 2 makes any written arbitration agreement valid, irrevocable, and enforceable "*without mention* of the validity of the contract in which it is contained," and then held that, because "an arbitration provision is severable from the remainder of the contract," the failure to directly challenge the delegation provision prevents a court from considering the question of the contract's validity. *Id*. at 70 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)). Put simply, a valid delegation provision requires the Court to defer questions of a contract's validity to the arbitrator. Thus, "unless [a plaintiff] challenged the delegation provision specifically, we must treat it as valid under [9 U.S.C. § 2] and must enforce it under [9 U.S.C. §§ 3 and 4], leaving any challenge to the validity of the Agreement as a whole for the arbitrator." 561 U.S. at 72.

The delegation provision in this case states:

> [T]he Arbitrator, and not a court or agency, will decide all questions of arbitrability, specifically including but not limited to whether the parties entered into an agreement to arbitrate; whether the Agreement is unconscionable, otherwise voidable, or void; and whether the Agreement can be enforced even if unconscionable or otherwise voidable through modification or severance[.]

(Doc. 17-1 at 16-17.) As in *Rent-A-Center*, Plaintiffs do not directly challenge the enforceability of the delegation provision, only the validity and conscionability of the contract as a whole. (*See generally*, Doc. 26.) Indeed, in their short discussion regarding who should decide arbitrability, Plaintiffs argue that "Wallace's signature on the operative August 2015 Mutual Agreement to Arbitrate that would cover the class period was forged . . . Accordingly, the Court not an Arbitrator should decide the issue of arbitrability since [Wallace] never agreed to have the arbitrator decide gateway issues." (Doc. 26 at 15.) Assertions that the contract lacked adequate acceptance or consideration and arguments that the terms of the contract are unconscionably onerous are clearly challenges to the validity and enforceability of the contract as a whole. Accordingly, the holding in *Rent-A-Center* would ostensibly compel arbitration in this case.

However, Plaintiffs' challenge to Wallace's contract goes beyond its "validity" and directly challenges the very formation of an enforceable contract. *Rent-A-Center* does not expressly address that issue, but in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006), on which the *Rent-A-Center* Court relied, the Court explained that "[t]he issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." The Court clarified that its holding did not answer whether an attack on the existence of a concluded agreement was a validity challenge that had to be delegated to the arbitrator. *Id*. On that issue, the Court apparently deferred to the state courts' handling of that question. *Id*.

Wallace left Defendants' employ in the spring of 2015. (Doc. 26 at 6.) He asserts that, when he returned a few months later, he was presented with an already-executed copy of the

9

2015 Agreement. (*Id*.) He claims that he told Defendants' office manager "that he did not authorize [his signature] nor agree to the document being signed." Thus, Plaintiffs argue, no contract was ever formed. (*Id*. at 7.)

Defendants argue that Wallace accepted the terms of the 2015 Agreement by continuing to work for them. Indeed, the Agreement states that "[t]he submission of an application, acceptance of employment or the continuation of employment by an individual shall be deemed to be, and shall constitute, acceptance of this Agreement. No signature shall be required for this Agreement to be applicable." (*Id*. at 22.) Plaintiffs concede that Wallace was aware of the Agreement when he began working for Defendants in 2013 and understood that accepting its terms was a prerequisite to employment—"Wallace was told that he had to fill out and execute these forms . . . [H]e did not believe that the execution of these documents was optional since he was an at-will employee . . . Wallace legitimately thought that if he refused to execute the documents then he would be terminated."—but they argue that his continued employment was not effective acceptance. (Doc. 26 at 6.)

Guided by *Buckeye Check Cashing*, this Court looks to Missouri law to determine whether there was sufficient acceptance to form a contract in this case. Whether continued employment is sufficient under Missouri law to manifest acceptance of an arbitration agreement is somewhat unclear. In *Berkley v. Dillard's Inc.*, 450 F.3d 775, 777 (8th Cir. 2006), the Eighth Circuit affirmed this Court's order compelling arbitration based on contract language that read, "by 'accepting or continuing employment with Dillard's, you have agreed to accept the Program known as the Agreement to Arbitrate Certain Claims.'" Later, in *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476, 478 (Mo. Ct. App. 2010), the Missouri Court of Appeals considered an arbitration agreement with a provision that read, "I understand that my employment by Jack in

the Box and its affiliates is automatically subject to the terms of this Agreement if I continue my employment." The court found that plaintiff's continued employment was insufficient, noting that, in *Dillard's*, the company had expressly informed its employee that the arbitration agreement remained in effect even after the employee purported to reject it. *Id.* at 485-86. Because Jack-In-The-Box did not reaffirm the application of the arbitration agreement after its employee rejected it, the employee's continued employment was not a valid acceptance. *Id.* The court wrote, "[the employee's] rejection and continued employment, under basic contract principles, reasonably could be viewed as [his] counteroffer to [Jack-In-The-Box] that [the employee] would continue his employment without being subject to [Jack-In-The-Box's] arbitration policy." *Id.* The employee's rejection, in essence, amounted to a counter-offer of continued employment with no agreement to arbitrate, which Jack-In-The-Box had accepted.

The facts of this case certainly hew more closely to *Jack-In-The-Box* than *Dillard*'s. Most notably, Wallace asserts that he expressly rejected the terms of the Agreement and there is no allegation that Defendants reaffirmed the Agreement's binding effect. Without such a reaffirmation, the Court would presumably be bound to follow the Missouri Court of Appeals and consider Wallace's contract-formation argument before enforcing the delegation provision.

In fact, the Supreme Court of Missouri has held that a plaintiff's challenge to the formation of an arbitration agreement raised an "issue that is subject to resolution by Missouri state courts." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014).[2] However, in that case, the Missouri Supreme Court found, "Unlike the agreement at issue in *Rent–A–Center*, the arbitration agreement in this case *does not delegate to the arbitrator disputes regarding contract formation*." 450 S.W.3d at 774 (emphasis added). This Court interprets that finding to mean

---

[2] The Supreme Court of Missouri also recognized that federal and state courts often reach different conclusions on this issue. *See Baker*, 450 S.W.3d at 775 n.3.

11

that, in cases like this one where the delegation provision includes issues of formation, the Missouri Supreme Court *would* follow *Rent-A-Center* and delegate even fundamental contract-formation issues to the arbitrator. (*See* Doc. 17-1 at 16-17 (delegating, among other issues, "whether the parties entered into an agreement to arbitrate").)

Returning to and applying *Rent-A-Center*, the Court finds that Plaintiffs' failure to directly challenge the delegation provision precludes the Court from considering their contract-formation argument. The Court is therefore bound to compel arbitration.

Importantly, by compelling arbitration, the Court is not prohibiting Wallace from challenging the formation of the 2015 Agreement; he is still free to argue that his failure to sign it and refusal to accept its terms render the Agreement invalid under *Kunzie*. Instead, the Court is recognizing that Wallace must present those arguments to the arbitrator. If the arbitrator is persuaded, the Agreement will not be enforced and Wallace will be free to reopen this suit and proceed in federal court.

Finally, the Court notes that Wallace does not dispute the validity of the 2013 iteration of the Agreement which included an identical delegation clause and which expressly covered all claims or controversies "past, present or future." (*See* Doc. 17-1 at 3-11.) That version of the Agreement would theoretically cover the claims raised in this suit even if the 2015 iteration was not enforceable, and Wallace makes no argument to the contrary.

**Conclusion**

The Court concludes that Plaintiffs have not shown that the delegation provision in the Agreement is invalid. As such, "the Court's only role will be to enter an order compelling arbitration." *Titlemax*, 2016 WL 4158886, at *4.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Individual Arbitrations and To Stay Litigation (Doc. 16), is **GRANTED.**

**IT IS FURTHER ORDERED** that this matter is **STAYED** pending individual arbitration by Plaintiffs.

**IT IS FINALLY ORDERED** that the parties shall file with the Court a status update **every six months**.

Dated this 1th Day of March, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE